**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Montiah Chatman, | No. CV-17-03826-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Marci D Ferrell, et al., | |
| Defendants. | |

Plaintiff Montiah Chatman alleges that Defendants Marci Ferrell and Cindy Chrisman, employees at the Arizona Department of Child Services ("ADCS"), unlawfully removed her children from her home in violation of her and her sons' Fourth Amendment rights. Before the Court is Defendants' Motion to Dismiss First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 21.) The motion is fully briefed and neither party requested oral argument. (Docs. 22, 23.) For reasons stated below, the motion is denied.

## BACKGROUND

In November 2016, Plaintiff allowed her two sons, J.L.C. and E.V.T.P., to visit Corey Pearson, E.V.T.P.'s paternal grandmother, in Minnesota. (Doc. 16 ¶¶ 14-15.) Two days after dropping the boys off with Pearson, Plaintiff was contacted by the Minnesota Child Protective Services ("MCPS"), inquiring about whether she had abandoned the boys in the state. (¶¶ 21, 23.) Plaintiff returned to Minnesota, regained

custody of the boys, and immediately returned to Arizona. (¶¶ 24-26.)

Pearson subsequently filed suit in a Minnesota family court, and offered an affidavit asserting that Plaintiff had abandoned her boys in Minnesota. (¶¶ 27-29.) Pearson successfully obtained an *ex parte* temporary custody order over the children from the Minnesota District Court for Wright County (hereinafter "Minnesota order"). (¶ 30; Doc. 13-1.) Pearson contacted the ADCS and sought enforcement of the Minnesota order, and reported the children as missing to the Phoenix Police Department. (Doc. 16 ¶¶ 33-34.)

As a result, on December 29, 2016, ADCS investigator Ferrell met with Plaintiff and her boys to evaluate the children's condition. (¶ 37.) After spending time with the children, Ferrell was satisfied enough there was no abuse or neglect to take the children off the missing persons list. (¶¶ 38-39.) On January 4, 2017, however, Ferrell returned to Plaintiff's home and removed both boys from her custody. (¶¶ 44-45, 63.) Ferrell issued a temporary custody notice ("TCN"), which stated that removal was necessary because of the temporary custody order issued by the Minnesota court. (¶ 48.) Plaintiff had to undergo four months of litigation to get her boys back. (¶ 81.)

Plaintiff, individually and on behalf of J.L.C. and E.V.T.P., filed suit against Ferrell and Chrisman asserting a claim under 42 U.S.C. § 1983, as well as state common law claims for intentional infliction of emotional distress, false arrest, and negligence. (Doc. 16.) Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief may be granted.

## **JUDICIAL NOTICE**

Defendants request that the Court take judicial notice of the Minnesota order. (Doc. 13-1.) The Court may take judicial notice of public records without converting a motion to dismiss into one for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, the Court may not take judicial notice of a fact that is subject to reasonable dispute. *Id.*; Fed. R. Evid. 201. The document at issue consists of factual

and legal findings of the Minnesota District Court for Wright County.  The Court will take judicial notice of the existence of the Minnesota order because it is beyond reasonable dispute that the Minnesota order issued and contained these factual and legal findings.  Moreover, Plaintiff refers to the Minnesota order throughout her complaint (see, e.g., Doc. 16 ¶¶ 27-32, 34, 68-70, 99, 103), and therefore the Court may consider it under the incorporation by reference doctrine.  See *U.S v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  To the extent Plaintiff reasonably disputes the truth or validity of the factual and legal findings in the order, the Court judicially notices only the fact that the Minnesota order issued and contained certain findings and conclusions.  The Court does not take as true the findings and conclusions contained therein.

## **LEGAL STANDARD**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556)

## **DISCUSSION**

Defendants contend they are entitled to absolute quasi-judicial immunity or qualified immunity as to Plaintiff's § 1983 claim.  Defendants also contend that under

Arizona law they are entitled to absolute-quasi judicial immunity as to Plaintiff's state common law claims. The Court discusses each in turn.

**I. § 1983 Claim**

Section 1983 provides a cause of action for persons who have been deprived of their constitutional rights by persons acting under color of law. It is a mechanism "for vindicating federal rights elsewhere conferred," and "is not itself a source of substantive rights." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotations omitted). To succeed on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff alleges that Defendants violated her Fourth and Fourteenth Amendment rights by seizing her children without a warrant or the requisite exigency. (Doc. 16 ¶¶ 88-101.)

**A. Absolute Quasi-Judicial Immunity**

Absolute judicial immunity "insulates judges from charges of erroneous acts or irregular action." *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002). Judicial immunity is based on an understanding that these individuals execute an "independent and impartial exercise of judgment vital to the judiciary [which] might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). Quasi-judicial immunity extends judicial immunity to non-judicial officials when performing "official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving disputes." *In re Castillo*, 297 F.3d at 948.

Defendants contend that they are entitled to absolute quasi-judicial immunity because they were acting pursuant to a valid court order when they removed the children. Defendants rely on *Coverdell v. Department of Social and Health Services, State of Washington*, 834 F.2d 758, 765 (9th Cir. 1987), which states that a child protective services worker must be "accorded absolute quasi-judicial immunity from liability for

damages stemming from the worker's apprehension of a child pursuant to a valid court order."

*Coverdell*, however, no longer controls. Subsequent to *Coverdell*, the Supreme Court decided *Antoine*, which "worked a sea change in the way in which . . . absolute quasi-judicial immunity for nonjudicial officers" is applied. *In re Castillo*, 297 F.3d at 948. Now, it is "only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." *Id.* at 949; *see Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (noting that "circuit precedent, authoritative at the time that it issued, can be effectively overruled by subsequent Supreme Court decisions that 'are closely on point,' even though decisions do not expressly overrule prior precedent").

Here, Defendants do not allege that they exercised discretionary judgment. In fact, they allege the opposite—their actions were taken at the direction of, and in accordance with, the Minnesota order.[1] Defendants also contend that the Minnesota court order provided them "probable cause" for removing the children. (Doc. 21 at 5-6.) Specifically, Defendants assert the Minnesota order put them "on notice that exigent circumstances existed" in the home. (Doc. 23 at 3.) Defendants, however, cite no authority extending absolute quasi-judicial immunity to a state official under such circumstances. Accordingly, Defendants are not entitled to absolute quasi-judicial immunity.

**B. Qualified Immunity**

In the alternative, Defendants argue they are entitled to qualified immunity. A defendant is entitled to qualified immunity if her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two inquiries: whether the facts show that the officer's conduct violated

---

[1] Even if *Coverdell* controlled, Defendants actions were not taken pursuant to a court order because the Minnesota order did not direct removal of the children. Defendants concede as much in their reply brief. (Doc. 23 at 3.)

a constitutional right and whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In determining whether qualified immunity applies, courts have the discretion to bypass the first inquiry and proceed directly to the second. *Pearson v. Callahan*, 555 U.S. 223, 226 (2009).

A motion to dismiss based on qualified immunity puts the Court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record." *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). Granting dismissal based on qualified immunity "pursuant to a Rule 12(b)(6) motion is only appropriate if the Court can determine from the face of the complaint that qualified immunity applies." *Hernandez v. Ryan*, No. 09-CV-2683-PHX-DGC, 2010 WL 4537975, at *1 (D. Ariz. Nov. 3, 2010); *see also Groten v. Cali.*, 251 F.3d 844, 851 (9th Cir. 2001). Here, the Court finds that a final determination on qualified immunity cannot be made at this time.

Moving directly to the second prong, a right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). It is not necessary that there be a prior case with the identical facts showing that a right is clearly established; it is enough that there is preexisting law that provides a defendant "fair warning" that his conduct was unlawful. *Id.* at 1065. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Saucier*, 533 U.S. at 202 (emphasis added).

It is well established that "[p]arents and children have a [] constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). "Officials, including social workers, who remove a child from [his] home without a warrant must have reasonable cause to believe that the child is likely to experience

serious bodily harm in the time that would be required to obtain a warrant." *Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). Although serious allegations of abuse or neglect that have been investigated and corroborated usually give rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody, delay in taking children into custody or a prior willingness to leave the children in their home militates against finding such an exigency. *Id.* at 1294-1295; *see also Calabretta v. Floyd*, 189 F.3d 808, 817 (9th Cir. 1999) (finding social worker not entitled to qualified immunity for warrantless entry into home because 14-day delay between report and investigation demonstrated lack of exigency).

Based on the allegations in the complaint, Defendants contend that the "reasonable inference" is that they received the Minnesota order between the December 29 meeting and the January 4 meeting, and that the order's factual findings established probable cause that an exigency existed. Although this is a reasonable inference, it is not the only one. According to the complaint, ADCS was aware of the Minnesota order prior to the December 29 meeting. (Doc. 16 ¶¶ 34, 42.) Drawing all reasonable inferences in Plaintiff's favor, the agents' delay in taking the children into custody after receiving the Minnesota order plausibly shows a lack of exigency. Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 claim is denied.[2]

**II. State Common Law Claims**

Plaintiff also raises state common law claims for intentional infliction of emotional distress, false arrest, and negligence. (Doc. 16 ¶¶ 102-115.) As with Plaintiff's § 1983 claim, Defendants assert absolute quasi-judicial immunity. Whether Defendants are immune from Plaintiff's Arizona tort law claims is a question of Arizona law. *See Martinez v. California*, 444 U.S. 277, 282 n. 5 (1980) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity . . . ."); *Adams v. State*, 916 P.2d 1156, 1163 (Ariz. Ct. App.

---

[2] The Court does not decide whether Defendants violated a constitutional right because at this stage it is not equipped with the necessary facts to determine whether qualified immunity will ultimately protect them. Those issues must be resolved at summary judgment or at trial.

1995) (explaining judicial immunity is a "creature of the common law" and Arizona courts are responsible for shaping and monitoring [its] course). Federal courts must follow the decisions of a state's highest court when deciding issues of that state's law. *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 154 (9th Cir.1992). Arizona recognizes absolute quasi-judicial immunity when an official: (1) acts pursuant to a court order, or (2) performs a function integral to the judicial process. *Adams*, 916 P.2d at 1160-62.

Defendants appear to contend they are entitled to absolute quasi-judicial immunity under only the first category, arguing that they are entitled to immunity because they removed the children pursuant to the Minnesota order. (Doc. 16 ¶ 48; Doc. 23 at 8.) The Minnesota order, however, does not direct removal of the children. (Doc. 23 at 3.) Moreover, by its own terms, the order had already expired two weeks prior to the children being seized. (Doc. 13-1 ¶ 3.)

To the extent Defendants contend that they are entitled to immunity under the second category, the Court is unpersuaded. Arizona "[c]ourts have found that certain activities essential to the functioning of the judicial system warrant absolute protection from suit." *Adams*, 916 P.2d at 1161; *see also Griggs v. Oasis Adoption Servs., Inc.*, 383 P.3d 1145, 1149 (Ariz. Ct. App. 2016). "With respect to court officials performing functions in judicial proceedings, it has narrowly construed the requirement that the act raising the privilege have a close, direct relationship to such proceedings." *Davis v. Spier*, No. 08-CV-50-PHX-NVW, 2008 WL 1746165, at *8 (D. Ariz. Apr. 14, 2008) (internal quotation and citation omitted). For example, immunity has been extended to submitting presentence reports, submitting child-custody evaluations and recommendations, initiating the filing of child dependency petitions, submitting adoption recommendations, and making reports and recommendations to the court as a guardian ad litem. *Adams*, 916 P.2d at 1161. Arizona courts have extended absolute immunity to non-judicial officers performing a function, pursuant to a court directive, which was related to the judicial process. Here, there was no such directive to remove the children.

The decision of the Arizona Court of Appeals in *Adams* supports this conclusion. There, the court was asked to decide whether certain social workers were absolutely immune from claims for negligently supervising and investigating prospective adoptive parents. The court noted that the judge did "not specify how the caseworkers should conduct their investigations" and that the social workers had not shown that they "acted pursuant to any specific court order in conducting their investigations or in supervising the children post placement." *Id.* at 1160. Therefore, it held that the social workers' "investigative and supervisory functions cannot clearly be characterized as court-ordered so as to justify absolute immunity on that ground." *Id.* The Court finds this analysis equally applicable to this matter. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss First Amended Complaint (Doc. 21) is **DENIED**.

Dated this 29th day of June, 2018.

Douglas L. Rayes
United States District Judge