Martin A. Bihn (014338)
Donna M. McDaniel (017366)
BIHN & McDANIEL, P.L.C.
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
Tel:   (602) 248 9779
Fax:   (602) 248 9749
Email:       MBihn@phxlegal.com
             Donna@phxlegal.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Montiah Chatman, individually and on behalf of her two minor children, J.L.C. and E.V.T.P.;<br><br>Plaintiffs,<br>vs.<br><br>Marci D. Ferrell, Cindy Chrisman and John Sullivan<br><br>Defendants. | Case No: 2:17-cv-03826 DLR<br><br>**THIRD AMENDED COMPLAINT<br>AND<br>JURY DEMAND** |

For their Complaint against defendants, Plaintiffs Montiah Chatman and her two minor children, J.L.C. and E.V.T.P. allege as follows:

1.      This is a case of the Arizona Department of Children's Services ("ADCS") running amok, harming a mother and her two small boys and trampling their civil rights in the process.  ADCS removed two small boys from their mother, without a warrant, exigent circumstances or any other legal justification.  ADCS did not initiate the required Juvenile Court proceeding to allow the mother to contest the action.  Instead, ADCS immediately sent the boys to Minnesota in the custody of a person ADCS knew was the subject of a protective

1 order barring her from coming near the boys. Minnesota Child Protective Services removed 2 the boys shortly after they arrived and placed them in foster care. The mother singlehandedly 3 fought three cases in two states for four months to get her children back.  ADCS' conduct in 4 this matter is unconscionable.

5     2.    Plaintiffs Montiah Chatman and her children;  six year old son J.L.C. and three 6 year old son E.V.T.P., are all residents of Arizona.

7     3.    Upon information and belief, defendant Marci D. Ferrell is a resident of 8 Maricopa County, Arizona.

9     4.    Upon information and belief, defendant Cindy Chrisman is a resident of 10 Maricopa County, Arizona.

11     5.    Upon information and belief, defendant John Sullivan is a resident of Pinal 12 County, Arizona.

13     6.    The State of Arizona employed defendants Ferrell and Chrisman as 14 investigators with the Arizona Department of Child Safety and employed defendant Sullivan 15 as an Assistant Attorney General.

16     7.    Defendants caused events to occur within Arizona out of which this matter 17 arises.

18     8.    This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 19 USC § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 USC § 20 1367.

21     9.    Notice of Claim letters pursuant to A.R.S. § 12-821.01 were timely served on 22 defendants Ferrell and Chrisman on June 30, 2017.  Defendants Ferrell and Chrisman failed

to respond to the Notice of Claim letters and they were deemed denied. A Notice of Claim letter was served on John Sullivan in early November 2018 about a month after defendants identified him by name in their Answers to Plaintiffs' first set of interrogatories. The Notice of Claim was denied by the State of Arizona on November 28, 2018.

## ALLEGATIONS COMMON TO ALL CLAIMS

10. Montiah Chatman has court ordered sole custody of both children.

11. In 2012 a Minnesota Court granted Montiah full and sole custody J.L.C.

12. In 2016 the Pinal County Superior Court entered an order awarding Montiah full and sole custody of E.V.T.P.

13. Those orders remain in full effect.

14. Montiah also holds a valid order of protection against Colin Pearson, E.V.T.P.'s father.

15. E.V.T.P.'s grandmother is Corey Pearson. She lives in Minnesota. Corey Pearson is not related to J.L.C.

16. In late 2016 Corey Pearson contacted Montiah and asked her to bring J.L.C. and E.V.T.P. to visit her in Minnesota.

17. Montiah initially declined to allow J.L.C. and E.V.T.P. visit Corey Pearson in Minnesota.

18. Corey Pearson purchased non-refundable airline tickets for Montiah and the boys to fly to Minnesota.

19. Montiah reluctantly allowed the boys to visit for a week.

3

20. The plan was for Montiah to fly with the boys to Minnesota, drop them off and to immediately return to Arizona.

21. Montiah was to return a week later to pick the boys up and the three would fly home to Arizona.

22. Two days after she dropped the boys off in Minnesota, Montiah received a telephone call from an investigator with the Minnesota Child Protective Services ("MCPS").

23. The MCPS investigator stated that an anonymous caller told MCPS that Montiah had "abandoned" her children. Months later Montiah learned that the anonymous caller was actually Corey Pearson. Corey Pearson had been seeking SNAP benefits (food stamps) and childcare benefits from MCPS. Corey Pearson's allegations were utterly fabricated.

24. Montiah advised MCPCS that the boys had not been abandoned but were only visiting Pearson for a week.

25. MCPS took custody of the boys.

26. Ultimately MCPS sided with Montiah.

27. Montiah drove to Minnesota where, on November 21, 2016, MCPS officials turned the boys over to Montiah. They immediately returned to Arizona.

28. That next day Corey Pearson initiated a fraudulent family court case in Minnesota seeking custody of J.L.C. and E.V.T.P..

29. Corey Pearson sought emergency *ex parte* custody orders for both J.L.C. and E.V.T.P.

4

30. Corey Pearson submitted a materially false affidavit in support of her request. Pearson falsely swore that Montiah had abandoned the boys, and that she, Pearson, had physical custody of the boys. At the time Pearson swore out the affidavit, the boys were actually in Arizona.

31. On November 22, 2016 the Minnesota court issued what it termed an *ex parte* temporary emergency custody order purporting to grant Corey Pearson custody of J.L.C. and E.V.T.P.

32. Corey Pearson did not immediately serve Montiah with the orders.

33. Instead, Corey Pearson contacted the Wright County Sheriff's Office in Minnesota. Upon information and belief, Corey Pearson told the police that Montiah had kidnapped J.L.C. and E.V.T.P. and she attempted to file a missing persons report. Upon information and belief, sheriff's deputies checked with MCPS, determined the boys were properly with Montiah, and declined to take any action whatsoever on Corey Pearson's information.

34. Next, Corey Pearson contacted the Phoenix Police Department and filed false missing persons report. Upon information and belief, Corey Pearson falsely told the Phoenix Police Department that she had custody of J.L.C. and E.V.T.P. in Minnesota and that Montiah had kidnapped and wrongfully removed the boys to Arizona.

35. Upon information and belief Corey Pearson also began telephoning the Arizona Department of Children's Services ("ADCS") on a daily basis demanding that ADCS enforce her "Minnesota Custody Order."

36. On December 25, 2016, J.L.C. disclosed that Corey Pearson had sexually abused E.V.T.P. on three different occaisions during their time in Minnesota.

37. The next day Montiah obtained an Order of Protection against Corey Pearson from the Pinal County Superior Court. Montiah forwarded a copy of the Order of Protection to the Wright County Sheriff's Office so it could be served on Corey Pearson.

38. On December 29, 2016 Montiah and her children had to meet with the Phoenix Police Family Investigations Bureau detectives and ADCS investigator Marci Ferrell to address and dispel the "missing persons" report by Corey Pearson.

39. At the end of the meeting the Phoenix Police removed the boys from the Missing Children Database and advised Montiah that Corey Pearson could be charged with making a false police report.

40. ADCS investigator Marci Ferrell also spent some time with the children and was apparently also satisfied that they were not being abused or neglected and that Montiah properly had custody of them.

41. During their meeting Montiah told Marci Ferrell about the abuse the boys suffered from Corey Pearson, the Order of Protection against Corey Pearson and about the two valid custody orders granting Montiah full and sole custody of the boys.

42. Montiah Chatman also gave Marci Ferrell copies of the Orders of Protection against Corey Pearson issued days earlier by the Pinal County Superior Court.

43. Ferrell advised that Corey Pearson called the ADCS office every day with a new story in an effort to push ADCS into enforcing "custody orders."

44. At the beginning of 2017 Montiah believed that she had halted Corey Pearson's efforts to interefere with her family.

45. On January 4, 2017 Marci Ferrell appeared at Montiah's home at around 5 pm with two Coolidge police officers.

46. As the police officers stood by, Marci Ferrell announced that ADCS was removing E.V.T.P. and J.L.C. and taking them into custody for up to 72 hours.

47. Upon information and belief, defendants Ferrell and Christman made the decision to remove E.V.T.P. and J.L.C. and to turn them over to Pearson over a month earlier, in late October or early December 2016.

48. Montiah objected telling Ferrell and the officers obout the order of protection for E.V.T.P.

49. Montiah told the officers that Ferrell was intending to turn E.V.T.P. over to Corey Pearson in violation of the order of protection.

50. The police officers then backed away to get direction from a supervisor.

51. While they waited for a response from their supervisor, the officers asked for permission to enter the home.

52. The officers walked through the home and found it to be clean and orderly with food available. They also observed E.V.T.P. who appeared to be neatly dressed, clean and happy.

53. Upon information and belief, the officers saw no reason to believe that Elijah was in imminent danger of serious bodily injury, and no reason to believe he had suffered physical injuries.

7

54. The officers saw exigent circumstances to justify immediately removing E.V.T.P. and no grounds to believe that E.V.T.P. needed to be removed from his home at all.

55. The officers did not remove E.V.T.P. from his home.

56. The officers left E.V.T.P. in his room and went out to telephone their superior.

57. Over the next two hours the officers spoke with their superior, their legal advisor and defendant Chrisman to determine whether the children could be removed and turned over Pearson in light of the order of protection.

58. Ferrell and/or Chrisman telephoned Assistant Attorney General John Sullivan.

59. At that time defendant Sullivan handled DCS cases.

60. Sullivan spoke with the police officers and Ferrell several times over a speakerphone.

61. Sullivan advised and directed them to get permission to enter the home and then seize and remove E.V.T.P.

62. Sullivan's advice and direction violated well established law that a child can only be removed from his home without a warrant where there is reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

63. No exigent circumstances existed justifying the removal of E.V.T.P. (and JLC) without a warrant.

64. The officers then told Montiah that they were not going to seize E.V.T.P. pursuant to the Minnesota order.

8

65. However, the officers told Montiah that because DCS (Sullivan, Ferrell and Chrisman) had made the decision to remove E.V.T.P. that the officers were legally bound to assist DCS and could not challenge its decision.

66. Ferrell then advised Montiah to turn over E.V.T.P. or the officers would arrest her and they would take E.V.T.P.

67. Marci Ferrell served an ADCS "Temporary Custody Notice" ("TCN") relating to E.V.T.P. on Montiah.

68. On the TCN, Marci Ferrell had written that temporary custody was necessary because, "Minnesota issued a temporal [sic] custody order."

69. On the TCN, Marci Ferrell also checked the box to indicate that the following existed: "Other circumstances place a child at imminent risk of harm requiring removal (*describe specific circumstance*)." However, Marci Ferrell did not write a description of any specific circumstances and left that portion of the TCN blank.

70. Marci Ferrell told Montiah that she would be advised if ADCS filed a petition for a Preliminary Protective Hearing.

71. Montiah provided Marci Ferrell with a copy of the Order of Protection against Corey Pearson that had been issued days earlier by the Pinal County Superior Court.

72. Montiah begged Marci Ferrell not to give her children to Corey Pearson the person who harmed the children and who lived nearly 2000 miles away.

73. Upon information and belief defendants decided that they did not have to consider or comply with the Order of Protection issued by the Pinal County Superior Court because it had not yet been personally served on Corey Pearson.

74. Then Marci Ferrell discovered that J.L.C. was not home. J.L.C. was visiting Debra Chatman (Montiah's mother and J.L.C.'s grandmother) a few miles away.

75. Marci Ferrell yanked a crying E.V.T.P. from his mother's arms, put him in her car and drove to Debra Chatman's home to seize J.L.C.

76. At 9 pm Marci Ferrell also served Debra Chatman with a TCN.

77. On this TCN Marci Ferrell simply wrote "MN/Neglect"

78. Marci Ferrell failed to state the specific reason why temporary custody was necessary on the TCN form.

79. No exigent circumstances existed justifying the removal of J.L.C. without a warrant.

80. Marci Ferrell did not check the box on the TCN indicating that there were any other circumstances placing the child at imminent risk of harm requiring removal.

81. As Marci Ferrell grabbed a crying J.L.C. from his grandmother, Marci Ferrell broke down.

82. Marci Ferrell also began crying said she knew the removal was wrong but that she would be fired if she did not take the boys.

83. Upon information and belief Cindy Chrisman directed Marci Ferrell to remove E.V.T.P and J.L.C.; directed, knew, and/or approved of turning E.V.T.P. and J.L.C. over to Pearson. Upon information and belief, Chrisman set in motion a series of acts by her subordinate Ferrell that Chrisman knew or should have known would result in the deprivation of plaintiffs' rights. Defendant Sullivan directed, knew and/or approved of and participated in the removal of E.V.T.P. and J.L.C. and their turn over to Pearson.

84. Over the next two days Montiah repeatedly telephoned Marci Ferrell and supervisor, Cindy Chrisman. Both refused to speak with Montiah

85. Cindy Chrisman finally answered one of Montiah's calls and told Montiah that her children had been turned over to Corey Pearson and were already in Minnesota.

86. Montiah was frantic and told Cindy Chrisman that there was an order of proctection against Corey Pearson and that she had molested the younger boy. Cindy Chrisman told Montiah that she was done speaking on the subject and hung up.

87. Montiah immediately drove to Cindy Chrisman's ADCS office and asked to speak with her. Cindy Chrisman refused to meet with Montiah but had her secretary tell Montiah that it, "wasn't an Arizona problem and to take it up with Minnesota."

88. Corey Pearson's "Minnesota custody order," was not valid or effective in Arizona.

89. The Minnesota court had no jurisdiction to enter the custody order since the boys were not in Pearson's custody or even physically present in Minnesota when the order was issued.

90. Corey Pearson was required to comply with the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), (codified in Arizona at A.R.S. § 25-1001 through A.R.S. § 25-2067) before Arizona would enforce the "Minnesota Custody Order."

91. The UCCJEA provides enforcement mechanisms for out of state custody orders. In all cases, enforcement of an out of state custody order requires notice, a hearing and an Arizona Court Order to enforce the out of state order.

11

92. Neither Corey Pearson nor defendants made any effort to comply with the UCCJEA.

93. Upon information and belief, defendants knew and understood the law and made a deliberate choice to act out side of the law.

94. Upon information and belief, defendants as ADCS employees, had no independent legal authority to enforce an out of state custody order without complying with the UCCJEA.

95. Upon information and belief, defendants also failed to follow the laws, rules and regulations applicable to ADCS in numerous ways including, removing the children without cause, failing to hold a hearing within 72 hours and turning the children over to Corey Pearson, a person who was subject of an Arizona Superior Court protective order based on allegations of abusing the boys.

96. Corey Pearson returned to Minnesota with the children.

97. Montiah called the Wright County Sheriff's Office in Minnesota. The Wright County police had been trying to serve Corey Pearson with the order of protection but she had been avoiding service. At Montiah's urging, the deputies went to Corey Pearson's home.

98. The deputies served Corey Pearson with the order of protection and removed J.L.C and E.V.T.P. from the home.

99. The police officers turned the boys over to MCPS.

100. MCPS inititated a dependency case and placed both boys in foster care.

101. Montiah spent the next four months desperately trying to locate and recover her children.

102. Montiah inititated a custody proceeding in Arizona and successfully litigated both the dependency and family court custody matters in Minnesota.

103. Ultimately, Minnesota courts dismissed Corey Pearson's family court petition in its entirety.

104. MCPS dismissed its dependency and returned both boys to Montiah, and all three immediately returned to Arizona.

105. The four months in foster care was horrible for the two boys. They were beaten and abused and moved from their original placement to separate foster homes. Both suffered physical and emotional distress, some which may be permanent.

106. Montiah agonized over every moment that she was separated from her two boys knowing they had been placed with their abuser and then removed to foster care and abused by others.

107. All plaintiffs continue to suffer emotional distress as a result of defendants' conduct.

**COUNT I - 42 USC 1983**
**ALL PLAINTIFFS AGAINST**
**MARCI FERRELL, CINDY CHRISMAN, AND JOHN SULLIVAN**

108. Plaintiffs reallege the allegations contained in paragraphs 1-107 above as if fully set forth herein.

109. For the purposes of Count I, Marci Ferrell, Cindy Chrisman and John Sullivan are sued in their individual capacities.

110. At all material times Marci Ferrell, Cindy Chrisman, and John Sullivan were acting under color of state law.

111. Marci Ferrell, Cindy Chrisman and John Sullivan are "persons" within the meaning of 42 USC § 1983.

112. Marci Ferrell, Cindy Chrisman and John Sullivan acted individually and/or in concert and/or set events in motion to deprive plaintiffs of their rights, privileges or immunities secured by US Constitution, including but not limited to the Fourth and Fourteenth Amendments.

113. Parents and children have a well-elaborated constitutional right to live together without governmental interference. *Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir.2000).

114. The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1107 (9th Cir.2001).

115. Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1107 (9th Cir.2001).

116. The Fourth Amendment also protects children from removal from their homes absent such a showing. *Doe v. Lebbos,* 348 F.3d 820, 827 n. 9 (9th Cir.2003).

117. Defendants removed and separated J.L.C and E.V.T.P. from their mother without a warrant and in the absence of any exigent circumstances justifying the removal.

118. Defendants removed and separated J.L.C and E.V.T.P. from their mother without affording them the due process required under Arizona statutes requiring ADCS to return seized children within 72 hours or file a case in Juvenile Court.

119. Defendants removed and separated J.L.C and E.V.T.P. from their mother in spite of having the knowledge that the Minnesota custody order was <u>not effective</u> because neither Corey Pearson nor defendants had complied with the UCCJEA.

120. All Plaintiffs suffered damages as a result of defendants' unconstitutional actions.

121. Defendants acted with reckless and callous indifference to plaintiffs' federally protected rights entitling plaintiffs to punitive damages against Marci Ferrell and Cindy Chrisman.

## COUNT II

**State Law – Intentional Infliction of Emotional Distress**
**All Plaintiffs Against**
**Marci Ferrell and Cindy Chrisman and John Sullivan**

122. Plaintiffs reallege the allegations contained in paragraphs 1-121 above as if fully set forth herein.

123. The conduct of defendants Marci Ferrell and Cindy Chrisman and John Sullivan was extreme and outrageous; they knew they were violating the law when they removed J.L.C. and E.V.T.P. from Montiah: (1) without obtaining a warrant and in the absence of any exigent circumstances, (2) without following ADCS's own statutes, rules and regulations which would have afforded plaintiffs' due process, and (3) with an ineffective Minnesota custody order and without complying with the UCCJEA.

15

124. Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct in: (1) separating children from their mother without cause, (2) giving the children to a person that had not been vetted by ADCS with the knowledge that the children would be immediately removed to Minnesota, and (3) giving the children to a person who was the subject of an order of protection based on findings that she had abused these very same children.

125. Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

126. As a result of defendants' conduct Montiah Chatman and her children, J.L.C. and E.V.T.P. have suffered severe emotional distress.

## COUNT III

**State Law – False Arrest/False Imprisonment
J.L.C. and E.V.T.P
Against
Marci Ferrell and Cindy Chrisman and John Sullivan**

127. Plaintiffs J.L.C. and E.V.T.P. reallege the allegations contained in paragraphs 1-126 above as if fully set forth herein.

128. Marci Ferrell and Cindy Chrisman and John Sullivan, acting individually and in concert, committed the tort of false arrest by intentionally seizing J.L.C. and E.V.T.P. and removing them from their homes without consent and without any lawful authority.

129. Marci Ferrell and Cindy Chrisman and John Sullivan, acting individually and in concert, committed the tort of false imprisonment by intentionally detaining J.L.C. and

16

E.V.T.P. without consent and without lawful authority by holding them for days before turning them over to Corey Pearson.

130. As a result of defendants' conduct J.L.C. and E.V.T.P. have been harmed and suffered damages.

## COUNT IV

**State Law - Negligence**
**J.L.C. and E.V.T.P**
**Against**
**Marci Ferrell and Cindy Chrisman**

131. Plaintiffs reallege the allegations contained in paragraphs 1-130 above as if fully set forth herein.

132. As employees of ADCS, Marci Ferrell and Cindy Chrisman and John Sullivan owed a duty to the public at large and Montiah, J.L.C. and E.V.T.P. in particular to conduct themselves in accordance with the laws governing ADCS, to include those pertaining to the removal of children from their parents, the validity of custody orders, and the suitability of persons to take custody of children.

133. Upon information and belief, Marci Ferrell and Cindy Chrisman breached their duties by removing J.L.C. and E.V.T.P. from their mother without legal cause or justification, by failing to recognize that the Minnesota custody order was not effective in Arizona, and by delivering J.L.C. and E.V.T.P. to Corey Pearson, a person defendants knew or should have known was wholly unsuitable to be entrusted with care and cusody of these children and was the subject of an order of protection.

134.   Defendants' conduct was the actual and proximate cause of the emotional injuries suffered by Montiah and the emotional and physical injuries suffered by J.L.C. and E.V.T.P.

135.   As a result of defendants' conduct Montiah, J.L.C. and E.V.T.P. have been harmed and suffered damages.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment for the Plaintiffs and against each of the Defendants and grant:

A.   Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B.   Special damages in an amount to be determined at trial;

C.   Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

D.   Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

E.   Pre- and post-judgment interest at the lawful rate; and,

F.   Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**JURY DEMAND**

1.   Plaintiffs demand a jury trial on all issues.

18

Dated this 31st day of January, 2019.

BIHN & McDANIEL, P.L.C.

/s/ Martin A. Bihn
_____
Martin A. Bihn
*Attorneys for Plaintiffs*

Original of the foregoing electronically filed this 31st day of January, 2019, with:

Clerk of the United States District Court using the CM/ECF System for filing and Transmittal of a Notice of Electronic Filing to the following registrants:

MARK BRNOVICH
Attorney General
JAMES B. BOWEN, Bar No. 013774
CYNTHIA D. STARKEY, Bar No. 013418
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
James.Bowen@azag.gov
Cynthia.Starkey@azag.gov

/s/ Martin A. Bihn
Martin A. Bihn