**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Montiah Chatman, individually and on behalf of her two minor children, J.L.C and E.V.T.P., | No. CV-17-03826-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Marci D Ferrell, et al., | |
| Defendants. | |

Before the Court are the parties' cross motions for summary judgment, which are fully briefed. (Docs. 110, 112, 119, 121, 126.) For the following reasons, the Court will grant Plaintiffs' motion for partial summary judgment and deny Defendants' motion for summary judgment.[1]

**I. Background**

This case stems from the removal of five-year-old JLC and two-year-old EVTP from the custody of their mother, Montiah Chatman, in January of 2017. On October 14, 2016, for reasons in dispute, Ms. Chatman flew with her sons from their home in Arizona to the home of EVTP's paternal grandmother[2]—Cory Pearson—in Monticello, Minnesota.

---

[1] The parties' request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Ms. Pearson has no blood relation to Ms. Chatman or JLC.

(Doc. 119-3 at 2.) On arrival, Ms. Chatman granted two months' temporary custody of JLC and EVTP to Ms. Pearson—evidenced in writing—and thereafter returned to Arizona. (Doc. 119-3 at 20.) On October 18, 2016, Ms. Pearson contacted Wright County Human Services ("WCHS"), alleging that Ms. Chatman abandoned the children and that JLC and EVTP had witnessed and suffered abuse in Arizona. (Doc. 119-2 at 19-21.) WCHS then visited Ms. Pearson's home on multiple occasions to monitor the boys. (Doc. 119-3 at 13.)

On November 21, 2016, WCHS delivered JLC and EVTP to Ms. Chatman—who had traveled back to Minnesota to re-secure her sons—and the three returned to Arizona. The following day, Ms. Pearson filed a petition for temporary emergency custody in Minnesota's tenth judicial district court, which granted the petition in part (the "Minnesota Order"). (Doc. 110-5 at 2-6.) On December 6, 2016, Ms. Pearson contacted the Phoenix Police Department ("Phoenix PD"), alleging that Ms. Chatman was consorting with a sex offender and that both EVTP and JLC were missing children. (Doc. 110-5 at 8-12.) The next day, Phoenix PD alerted the Arizona Department of Child Safety ("DCS") of the allegations, and DCS assigned Marci Ferrell, a DCS investigator, to the case.

On December 25, 2016, JLC described to his mother that Ms. Pearson had sexually abused EVTP during their stay in Minnesota. (Doc. 110-1 at 14.) Ms. Chatman reported the accusation to WCHS and the Wright County Sheriff's Office and obtained an order of protection against Ms. Pearson in the Pinal County Superior Court (the "Pinal Order") on December 28, 2016. (Doc. 110-1 at 11.) On December 29, 2016, at the request of Phoenix PD, Ms. Chatman brought the boys to Childhelp Children's Center ("Childhelp") to meet with detectives and Ms. Ferrell. (Doc. 119-2 at 50.) Childhelp staff found the children in good health and removed them from the database of missing children. (Doc. 119-2 at 50.) Ms. Chatman told Ms. Ferrell about Ms. Pearson's alleged abuse of EVTP and showed her a copy of the Pinal Order, but did not permit the children to be assessed by a forensic interviewer or to be spoken to alone. Ms. Ferrell called her supervisor, Cindy Chrisman, for instructions. Ms. Chrisman directed that JLC and EVTP should not be removed from Ms. Chatman's custody. (Doc. 199-2 at 33.) At the end of the meeting, Ms. Ferrell allowed

the boys to return home with their mother. (Doc. 119-2 at 32.)

Six days later, Ms. Chrisman directed Ms. Ferrell to remove JLC and EVTP from Ms. Chatman's custody.[3] Ms. Ferrell requested the assistance of two officers from the Coolidge Police Department to effectuate the removal. She advised them that she planned to serve temporary custody notices ("TCN") on Ms. Chatman, take temporary custody of JLC and EVTP, and deliver the boys to Ms. Pearson based on the Minnesota Order. (Doc. 110-1 at 3, 7, 17.) The officers and Ms. Ferrell (the "Squad") arrived at Ms. Chatman's temporary residence. Ms. Chatman explained that EVTP was inside, but that JLC was at her parents' home. The Squad explained that they sought to remove EVTP, but Ms. Chatman objected and provided them with a copy of the Pinal Order, which had yet to be served on Ms. Pearson. (Doc. 110-3 at 7.) The Squad asked permission to enter the home, which Ms. Chatman granted. They concluded the home was clean and orderly with food available, and that EVTP was neatly dressed, clean, and happy. (Doc. 110-1 at 3, 7, 18; Doc. 110-3 at 12.) The officers then sought guidance from their supervisor and legal advisors, who explained that they could not seize EVTP absent exigent circumstances or a signed order from an Arizona judge. The Squad thereafter spoke to assistant attorney general, John Sullivan, over the phone. The officers expressed concern that they lacked the justification to remove EVTP. Mr. Sullivan explained that if the Squad had received permission to enter the home, they could remove EVTP. (Docs. 110-6; 110-2 at 6-7.) The Squad then removed EVTP.

The Squad then traveled to the home of Ms. Chatman's parents, served another TCN, and took custody of JLC. Ms. Ferrell delivered the boys to a shelter. The shelter delivered EVTP and JLC to Ms. Pearson, who had traveled to Arizona. Ms. Pearson then transported the boys to Minnesota. Shortly after their arrival, Wright County Sheriff's deputies served the Pinal Order on Ms. Pearson and seized the boys. Wright County initiated a juvenile dependency proceeding and placed both boys in foster care, within

---

[3] The DCS social work team customarily would meet to determine a removal course of action—a practice referred to as staffing—and would compile an official record of the meeting. (Doc. 110-4 at 9.) No such record exists in the DCS file here, and no witness can recall the staffing.

which the boys were separated. After a four-month legal battle, Ms. Chatman regained custody of her sons.

On October 18, 2017, Ms. Chatman, individually and on behalf of JLC and EVTP, filed suit in this Court. (Doc. 1.) Plaintiffs' operative complaint, filed on January 31, 2019, asserts four counts. (Doc. 68.) Count one is a claim against all defendants for violations of 42 U.S.C. § 1983. Counts two and three are state law claims against all defendants for intentional infliction of emotional distress and false arrest/false imprisonment, respectively. Count four is a state law negligence claim against Ms. Ferrell and Ms. Chrisman.

On November 6, 2019, Plaintiffs filed a motion for partial summary judgment that seeks summary judgment on count one only. (Doc. 110.) The following month, Defendants filed a cross motion for summary judgment, seeking summary judgment on all claims. (Doc. 119.) The motions are now ripe.

**II. Legal Standard**

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question. *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Discussion**

    **A.  42 U.S.C. § 1983**

Both Plaintiffs and Defendants argue for summary judgment in their favor as to count one under 42 U.S.C. § 1983. For the reasons explained below, summary judgment is granted to Plaintiffs.

Section 1983 creates a cause of action against a person who, acting under color of state law, violates the constitutional rights of another person. The constitution generally guarantees parents and children the right to live together without governmental interference. *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). Ordinarily, under the Fourth and Fourteenth Amendments, government officials are required to obtain judicial authorization before removing children from their parent's custody. *Kirkpatrick v. Cty of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016); *Wallis v, Spencer*, 202 F.3d 1126, 1136 (9th Cir. 1999). Accordingly, Plaintiffs may establish a prima facie case under § 1983 against each defendant by showing (1) action or participation, (2) by that official acting under color of state law, (3) resulting in removal of a child, and (3) without a court order authorizing the removal. *Birair v. Kolycheck*, No. CV-15-01807-PHX-DJH, 2018 WL 4220759, at *9 (D. Ariz. Sept. 5, 2018). Here, it is undisputed that Defendants were officials acting under color of state law, removed EVTP and JLC from Ms. Chatman's

- 5 -

custody, and did not possess a court order authorizing the removal of EVTP and JLC. The Court therefore looks to the first prong to determine whether each defendant acted or participated in the removal.

It is undisputed that Ms. Ferrell personally removed EVTP and JLC and all evidence indicates that Ms. Chrisman approved the removal of the children. (Doc. 110-3 at 14; Doc. 121-2 at 15.) However, Defendants assert that § 1983 liability cannot extend to Mr. Sullivan because his actions did not cause the removal of EVTP and JLC. On the contrary, Ms. Ferrell and Ms. Chrisman confirmed that Mr. Sullivan approved the removal of the children. (Doc. 110-3 at 14; Doc. 110-3 at 13; Doc. 121-2 at 15.) Mr. Sullivan does nothing to refute this understanding. His assertion that he retains no independent recollection of the events leading up to the removal of the children (Doc. 110-2 at 8; Doc. 121-4 at 7) is insufficient to create a triable issue of fact on this issue. *State Farm Mut. Auto. Ins. Co. v. Ash*, 888 P. 2d 1354, 1361 (Ariz. Ct. App. 1994); *Fed. Election Com'n v. Toledano*, 317 F. 3d 939, 949-50 (9th Cir. 2002) ([Defendant's] repeated failures of recollection, and his steadfast denials . . . fall far short of satisfying [the summary judgment] standard.").

Defendants also argue that Mr. Sullivan's actions could not have proximately caused the removal of the children because the decision to remove EVTP and JLC was made before the Squad contacted him by phone. However, body camera recorded the concerns the officers harbored regarding the legality of removing the children. The Squad assisted Ms. Ferrell in the removal only after Mr. Sullivan opined, "if they're willing to allow you to come into the home, [] you have every right to—to remove that child[.]" (Doc. 110-2 at 6-7.) "[G]overnment officials . . . are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions." *Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009) (citations omitted). It was reasonably foreseeable that, after speaking to Mr. Sullivan, the Squad would remove EVTP in reliance on his instructions. The Court therefore rejects Defendants' argument. Because all four prongs have been met, Plaintiffs have established a prima facie case against all defendants under § 1983 based on the warrantless removal of EVTP and JLC.

Nevertheless, narrow circumstances provide an exception in which the government may constitutionally remove children temporarily from their families without judicial authorization. Relevant here, government officials may do so when facing exigent circumstances. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018); *Demaree v. Pederson*, 887 F.3d 870, 878 (9th Cir. 2018). In the context of child removals by social services agencies, exigency must be shown by "particularized evidence," and cannot be satisfied by probable cause or by "mere speculation that the exigency exists." *Mabe v. San Bernardino Cty, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1108 n. 2 (9th Cir. 2001); *Bailey v. Newland*, 263 F.3d 1022, 1033 (9th Cir. 2001). Instead, exigent circumstances exist only when government officials have reasonable cause to believe that: (1) at the time of seizure, the children are in imminent danger of suffering serious physical injury; (2) the scope and degree of the intrusion is reasonably necessary to avert that specific injury; and (3) there is insufficient time to obtain a warrant to prevent such injury. *Birair*, 2018 WL 4220759, at *9.

Defendants have offered no evidence that they had reasonable cause to believe that EVTP and JLC were in imminent danger of suffering serious physical injury at the time of the seizure. On the contrary, both officers at the scene testified, "I, personally, saw no reason to believe that EVTP was in imminent dangerous of serious bodily injury[,] had suffered physical injuries[, or] needed to be removed from his home without a warrant[, and] I saw no exigent circumstances justifying the immediate removal of EVTP from his mother and home."[4] (Doc. 110-1 at 3, 7, 8, 18; Doc. 110-3 at 12.) Ms. Ferrell also admitted

---

[4] Body cam footage also catches an officer at the scene—on the phone with Mr. Sullivan—explaining,

> "I've called our—our legal advisors and I've called our commander, and…they're telling us that . . . we can't force our way in to get the . . . kid unless we see something exigent . . . And we've walked through the house . . . between the commander and our legal advisor . . . without like a court order signed by a judge[,] we can't forcibly take the kid. . . I just want to do the right thing, because I don't want to get my butt in trouble[.]"

(Doc. 110-2 at 4-5.)

that she did not see anything at either scene that made her believe the boys faced an imminent risk of harm. (Doc. 110-3 at 11-12; Doc. 110-4 at 2; Doc. 121-2 at 14.) Ms. Chrisman similarly confirmed that the decision to remove the children was not based on a belief that they were in imminent danger of harm. (Doc. 110-4 at 10.)

After the fact, Defendants now argue that Ms. Chatman's prior relationship with an imprisoned sex offender placed the boys at immediate risk of harm. But from his cell, Ms. Chatman's ex-boyfriend could not have presented any imminent threat. Defendants also contend that the information contained in the Minnesota Order gave Defendants reasonable cause to believe that EVTP and JLC were in imminent danger, citing language stating, "there is an adequate basis for the Court to conclude that the children are in immediate danger of physical harm [.]" (Doc. 128-8 at 5.) Defendants possessed the Minnesota Order in early December 2016. But if the Minnesota Order did, in fact, lead Defendants to believe that EVTP and JLC were in danger of imminent harm, Defendants inexplicably delayed one month before seeking removal. *See Birair*, 2018 WL 4220759, at *9 ("[A]n official's prior willingness to leave the children in their home militates against a finding of exigency[.]"). No reasonable juror could find that Defendants have met the first prong of the test. Defendants have failed to establish that sufficient evidence exists for a reasonable juror to find the existence of exigent circumstances. Therefore, the Court concludes that Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights.

Defendants assert that they are nevertheless entitled to qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Defendants are not entitled to qualified immunity if (1) the facts adduced show that the officer's conduct violated a constitutional right, and (2) that right was 'clearly established' at the time of the violation." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016). Defendants violated Plaintiffs' Fourth and Fourteenth

Amendment rights as explained, above. Therefore, the Court turns to the second prong.

Whether a right was clearly established at the time of the violation presents a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). Although the Court does not require a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). When JLC and EVTP were removed in January 2017, precedent made evident that to seize a child without a warrant or consent, the government official must possess reasonable cause at the time of seizure to believe that the child is in immediate danger of suffering serious physical bodily injury, and the scope of such intrusion must be narrowly tailored to avert that injury. *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000); *Mabe*, 237 F.3d at 1109-10; *Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007); *Fredenburg v. Cty. of Santa Clara*, 407 Fed. App'x. 114, 115-116 (9th Cir. 2010). Consequently, Plaintiffs' Fourth and Fourteenth Amendment rights to family unity in the absence of judicial authorization of separation or exigent circumstances was clearly established at the time of the violation. Plaintiffs are therefore entitled to summary judgment under count one.

### B. State Claims

Defendants also seek summary judgment on Plaintiffs' three Arizona state law claims. The Court will deny summary judgment to Defendants for the following reasons.

#### 1. Intentional Infliction of Emotional Distress

Defendants assert that summary judgment on Plaintiffs' claim for intentional infliction of emotional distress is appropriate because Plaintiffs have not produced evidence on the first two elements of the prima facie test. To make a prima facie case of intentional infliction of emotional distress, Plaintiffs must produce evidence suggesting that: (1) Defendants' conduct was extreme and outrageous, (2) Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from the conduct, and (3) Plaintiffs suffered severe emotional distress as a result of the conduct. *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1987).

Turning to the first element, it is the Court's role to "determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citation omitted). The facts, interpreted in the light most favorable to Plaintiff, are as follows. Defendants directed the removal of or personally removed EVTP and JLC from Ms. Chatman's custody, despite lack of judicial authority or exigent circumstances. Defendants then failed to return the children within 72 hours as required under A.R.S. § 8-821. On January 7, 2017, after ignoring Ms. Chatman's calls since the January 4 removal, Ms. Chrisman called Ms. Chatman and informed her that she would be turning over EVTP and JLC to Ms. Pearson, who DCS knew was the subject of the Pinal Order. When Ms. Chatman protested and asked how DCS could deliver her children to someone who had molested her child, Ms. Chrisman responded that "it wasn't Arizona['s] problem and to take it up with Minnesota." (Doc. 112-1 at 8.) Defendants then turned the children over to Ms. Pearson, after which Wright County quickly removed them pursuant to the Pinal Order and placed them in foster care. A reasonable juror could conclude that the foregoing facts are sufficiently extreme and outrageous to survive summary judgment. *See Ford* 734 P.2d at 585 (explaining that conduct is extreme and outrageous when "an average member of the community would . . . exclaim, "Outrageous!").

Turning to the second element, in order to survive summary judgment, Plaintiffs must produce evidence suggesting that Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that distress would result. *Id.* Ms. Ferrell and Ms. Chrisman both admitted that they were aware that removal would cause Plaintiffs emotional distress. (Doc. 121-2 at 3, 10.) Ms. Chrisman additionally testified that she understood that turning over the boys to a person accused of abusing them would likely cause Ms. Chatman distress. (Doc. 121-3 at 7.) Finally, Mr. Sullivan as assistant attorney general was specifically assigned to DCS cases (Doc. 110 at 6); based on this experience, a juror might reasonably conclude that Mr. Sullivan, if not intimately familiar with the emotional distress caused by such removals, at least recklessly disregarded such

consequences when directing removal. Accordingly, the Court rejects Defendants' argument and concludes that Plaintiffs have established a prima facie case of intentional infliction of emotional distress.

### 2. Qualified Immunity

Without making additional arguments as to the merits of the prima facie state claims brought by Plaintiffs, Defendants briefly and broadly assert that all defendants are entitled to qualified immunity on all three because Defendants reasonably believed that their actions were lawful. Defendants' argument fails because "[q]ualified immunity is unavailable if the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Pinal Cty. v. Cooper ex rel. Cty. of Maricopa*, 360 P.3d 142, 146 (Ariz. Ct. App. 2015) (citation omitted). Here, Defendants possessed the mental state necessary to render qualified immunity inappropriate. The Court will address each defendant, in turn.

Mr. Sullivan, as assistant attorney general in charge of DCS cases, was compelled by his position to understand laws relevant to DCS activity. He cannot persuasively argue that his reliance on the Minnesota Order to direct Defendants' action was reasonable because the Minnesota Order granted Defendants no authority to remove EVTP or JLC, as Arizona's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") makes clear. A.R.S. § 25-1002. Additionally, A.R.S. § 8-821—the DCS temporary custody statute in effect from July 3, 2015 to June 30, 2018—authorized DCS employees, in relevant part, to take temporary custody of a child only with probable cause to believe the child is a victim or will imminently become a victim of abuse or neglect. Mr. Sullivan incorrectly advised the Squad that they could remove EVTP simply because they had gained lawful entry to Ms. Chatman's residence, even though officers explained to him that they did not believe that EVTP was a recent victim of abuse or likely to suffer imminent harm. Because Mr. Sullivan knew or should have known that removal of EVTP violated established law, he is not entitled to qualified immunity on Plaintiffs' state law

claims.

Next, Ms. Ferrell as a DCS employee, knew or should have known that her removal of the boys violated established law. To reiterate, A.R.S. § 8-821 authorized DCS employees to take temporary custody of a child only where there is probable cause to believe the child is a victim or will imminently become a victim of abuse or neglect. DCS's own TCN form, which Ms. Ferrell filled out and served on Ms. Chatman, itemized the circumstances under which a child could be removed. (Doc. 110-2 at 11.) Ms. Ferrell remarked that none of the listed circumstances applied to justify removal, but nevertheless moved forward with removal. (Doc. 110-3 at 11.) Ms. Ferrell is therefore not entitled to qualified immunity on Plaintiffs' state law claims.

Finally, Ms. Chrisman, as a DCS supervisor, knew or should have known that her failure to return the boys to Ms. Chatman within 72 hours violated established law. A.R.S. § 8-821 required removed children to be returned within 72 hours, in the absence of the filing of a dependency petition. This requirement is emphasized on DCS's TCN form in bold letters on page one of two. (Doc. 110-2 at 11.) Ms. Chrisman advised her subordinates regarding the TCN form and was therefore expected to have a general understanding of its contents. (Doc. 110-4 at 8.) Yet, Ms. Chatman failed to return EVTP and JLC within 72 hours, even though DCS filed no dependency petition. Consequently, Ms. Chrisman is not entitled to qualified immunity on Plaintiffs' state law claims.

The Court therefore will deny Defendants' motion for summary judgment as to Plaintiffs' state claims.

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Doc. 110) is **GRANTED**. Defendants' cross motion for summary judgment (Doc. 128) is **DENIED**.

//
//
//
//
//

**IT IS FURTHER ORDERED** that a telephonic trial scheduling conference is set for **March 5, 2020 at 9:30 AM**. Counsel for Plaintiffs shall make the necessary arrangements for the conference call. All parties participating in the conference call shall do so via landline only. The use of cellular phones will not be permitted.

Dated this 13th day of February, 2020.

Douglas L. Rayes
United States District Judge